■ SLAVENBURG CORPORATION, Respondent, v OPUS APPAREL, INC., et al., Appellants, et al., Defendants.—Order, Supreme Court, New York County, entered January 29, 1980, which, *inter alia,* granted the motion of plaintiff-respondent for summary judgment against defendant-appellant Kestenbaum, among others, and denied his motion to serve an amended answer, and the judgment entered thereon on January 31, 1980, modified, on the law, to deny summary judgment against defendant-appellant Kestenbaum and to

grant his motion to serve an amended answer, and otherwise affirmed, without costs. Plaintiff is a factor and entered into a factoring agreement with defendant-appellant Opus Apparel, Inc., of which defendant-appellant Schlesinger was secretary, and thereafter into a factoring agreement with Nu-Ka-Pool Apparel, Inc., of which Schlesinger was secretary and treasurer and Kestenbaum was president. Kestenbaum is sued as a guarantor of Nu-Ka-Pool. He contends there is no debt or rather there would not be any debt to guarantee if there had not been deducted by the factor from the Nu-Ka-Pool income 5% of its monthly sales to be applied to the debt of Opus Apparel. The figures bear him out. The issue of fact, which leads to the conclusion that summary judgment should not have been granted against him, and that he should be permitted to amend his answer to plead that point, is whether the 5% was properly diverted from one corporation to the other. It is contended by the plaintiff that there was authorization by Schlesinger in writing. However, it was not done at the time the Nu-Ka-Pool factoring arrangement was made and Kestenbaum was present, but thereafter. Further, Kestenbaum had no apparent interest in having the corporation which he served, pay off debts of the other corporation, while Schlesinger had such a possible interest inasmuch as he served both corporations. The monthly financial statements for Nu-Ka-Pool, which plaintiff claims Kestenbaum saw or should have seen, do not elaborate on the 5%, but merely show an amount labeled "TRANSFER" and are not conclusive. Concur —Kupferman, Birns, Bloom and Lynch, JJ.

Murphy, P. J., dissents in part in a memorandum as follows: On January 10, 1977, defendant Nu-Ka-Pool entered into a factoring agreement with plaintiff Slavenburg. Defendant Schlesinger, the secretary-treasurer, signed the factoring agreement on behalf of Nu-Ka-Pool. On that same date, defendant Kestenbaum, the president of Nu-Ka-Pool, and defendant Schlesinger personally guaranteed Nu-Ka-Pool's obligation under that factoring agreement. On January 11, 1977, Schlesinger, on behalf of Nu-Ka-Pool, signed a letter agreement directing Slavenburg to withhold 5% of Nu-Ka-Pool's monthly sales and credit that amount to the account of defendant Opus. Kestenbaum maintains that he was unaware of this letter agreement. He further charges that Slavenburg and Schlesinger fraudulently diverted Nu-Ka-Pool's funds for approximately 22 months. Kestenbaum, therefore, contends that he may not be held liable on his personal guarantee of Nu-Ka-Pool's obligations under the factoring agreement. A court is justified in awarding summary judgment to a plaintiff if the defendant advances a defense that is patently sham (Sprung v Jaffe, 3 NY2d 539, 543). From January 1, 1977 through October 31, 1978, Slavenburg forwarded monthly statements to Nu-Ka-Pool indicating, inter alia, that transfers were being made from its account to the Opus account. Kestenbaum does not deny that he received and read each of those monthly statements. Thus, his present contention that he was unaware of the transfers and the underlying letter agreement of January 11, 1977 is an outright sham advanced in the hope of forestalling summary judgment against him. Furthermore, in signing the factoring agreement, Schlesinger showed that he had both actual and apparent authority to bind Nu-Ka-Pool. Hence, Nu-Ka-Pool cannot validly contend that Schlesinger acted beyond his powers in signing the letter agreement of January 11, 1977. Even if Schlesinger acted beyond his powers, Nu-Ka-Pool must be held bound by that letter agreement since it acquiesced in the monthly statements forwarded by Slavenburg (12 NY Jur, Corporations, § 685, p 199). Kestenbaum's guarantee was given "in consideration of any obligation heretofore or hereafter incurred by the Principal to you

whether under the aforesaid agreement or otherwise". Thus, it was recognized in the guarantee that Slavenburg and Nu-Ka-Pool might enter into subsequent agreements that would in no way affect Kestenbaum's personal guarantee of the factoring agreement. Therefore, Kestenbaum was in no way released from his personal guarantee by the subsequent execution of the letter agreement. I would also grant summary judgment against defendant Kestenbaum.